**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-CR-20583-SINGHAL(s)**

**UNITED STATES OF AMERICA**

v.

**PETER PORT,**

      **Defendant.**

**UNITED STATES' MOTION FOR PRELIMINARY ORDER OF FORFEITURE**

Pursuant to 18 U.S.C. § 982(a)(7), 21 U.S.C. § 853(p), and the procedures set forth in 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States of America (the "United States"), by and through the undersigned Assistant United States Attorney, hereby moves for the entry of a Preliminary Order of Forfeiture against Defendant Peter Port (the "Defendant") in the above-captioned matter. The United States seeks a forfeiture money judgment in the amount of $13,657,173.00 and the forfeiture of certain property in satisfaction thereof. In support of this motion, the United States provides the following factual and legal bases.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 7, 2021, a federal grand jury returned a Superseding Indictment charging the Defendant in Count 1 with conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. § 1349, among other counts. Superseding Indictment, ECF No. 126. The Superseding Indictment also contained forfeiture allegations, which alleged that upon conviction of a violation of 18 U.S.C. § 1349, the Defendant shall forfeit any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. *See id.* at 30. The Superseding Indictment alleged that the property subject to forfeiture as a result

of the alleged offense includes, but is not limited to:

    (i)    Real property located at 50 Starling Court, Roslyn, New York 11576 (the "Rosyln Property");
    (ii)    real property located at 2579 NW 61st Circle Boca Raton, Florida 33496 (the "Boca Raton Property");
    (iii)    A 2016 Mercedes Model E400C4, bearing Vehicle Identification Number WDDKJ6HB9GF317576 (the "Vehicle");[1]
    (iv)    The contents of account number 483049118363 at Bank of America held in the name of Safe Haven Recovery, Inc. ("Safe Haven Account 1");
    (v)    The contents of account number 483072846301 at Bank of America held in the name of Safe Haven Recovery, Inc. ("Save Haven Account 2");[2]
    (vi)    The contents of account number 483049118305 at Bank of America held in the name of Kiawah Properties Corp.;
    (vii)    The contents of account number 4835570293 at Bank of America held in the name of Interactive Abstract Corp.;
    (viii)    The contents of account number 4835570303 at Bank of America held in the name of Interactive Abstract Corp.;
    (ix)    The contents of account number 898086389630 at Bank of America held in the name of Troon Consulting, Inc.;
    (x)    The contents of account number 483068437818 at Bank of America held in the name of Excel One Municipal Corp.; and
    (xi)    The contents of account number 898095180930 at Bank of America held in the name of First Rate Medical Billing Corp.

*See id.* at 31-32.

On May 10, 2023, the Court accepted the Defendant's guilty plea to Count 1 of the Superseding Indictment. *See* Minute Entry, ECF No. 318; Plea Agreement ¶ 1, ECF No. 319. As part of the guilty plea, the Defendant agreed to the forfeiture of:

    (i)    A forfeiture money judgment in the amount of approximately $13,657,173.00, which represents the total amount of gross proceeds obtained as a result of violations of Title 18, United States Code, Section 1349, as alleged in the Indictment.
    (ii)    Save Haven Account 1;
    (iii)    Safe Haven Account 2;
    (iv)    The contents of account number 483049118305 at Bank of America held in

---

[1] The United States is no longer seeking forfeiture of the Vehicle due to insufficient net equity.

[2] Safe Haven Account 1 and Safe Haven Account 2 are also being sought for forfeiture against co-Defendant Brian Dublynn. *See* Brian Dublynn Motion for Preliminary Order of Forfeiture, ECF No. 211.

                the name of Kiawah Properties Corp.;
- (v) The contents of account number 4835570293 at Bank of America held in the name of Interactive Abstract Corp.;
- (vi) The contents of account number 4835570303 at Bank of America held in the name of Interactive Abstract Corp.;
- (vii) The contents of account number 898086389630 at Bank of America held in the name of Troon Consulting, Inc.;
- (viii) The contents of account number 483068437818 at Bank of America held in the name of Excel One Municipal Corp.; and
- (ix) The contents of account number 898095180930 at Bank of America held in the name of First Rate Medical Billing Corp.

Plea Agreement ¶ 18, ECF No. 319. The Defendant further agreed that in lieu of forfeiture of the Rosyln Property, the Defendant agreed to remit $71,503.26 in United States currency within 180 days of the entry of the Plea Agreement, and, in lieu of forfeiture of the Boca Raton Property, the Defendant agreed to remit $206,202.39 in United States currency within 180 days of the entry of the Plea Agreement. *Id.* at ¶¶ 20-21.

      In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer, ECF No. 320. The Factual Proffer also provided a basis for the forfeiture of property. *See id.* at ¶¶ 19, 25-26.

## II. MEMORANDUM OF LAW

### A. Directly Forfeitable Property

      Any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of a federal health care offense is subject to forfeiture. 18 U.S.C. § 982(a)(7). In a health care fraud case, gross proceeds constitute the entire amount received by a defendant as a result of the fraudulent scheme. *See United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344-46 (11th Cir. 2009) (upholding forfeiture money judgment that included not only Medicare reimbursements but also sums paid by private insurance companies and patients

because "but for [the defendant's] Medicare fraud, she would not have been entitled to collect these sums from the companies and patients"); *United States v. Saoud*, 595 F. App'x 182, 193 (4th Cir. 2014) ("'[G]ross proceeds' is properly interpreted to include the total amount of money brought in through the fraudulent activity, with no costs deducted or set-offs applied.") (quoting *United States v. Poulin*, 461 F. App'x 272, 288 (4th Cir. 2012)).

If a defendant is convicted of such violation, the Court "shall order" the forfeiture of property as part of the sentence. *See* 18 U.S.C. § 982(a)(7). Criminal forfeiture is governed by the preponderance standard. *See United States v. Hasson*, 333 F.3d 1264, 1277 (11th Cir. 2003). Upon finding that property is subject to forfeiture by a preponderance, the Court:

> . . . must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria. The court must enter the order without regard to any third party's interest in the property. Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

Fed. R. Crim. P. 32.2(b)(2)(A).

### B. Forfeiture Money Judgments

A forfeiture order may be sought as a money judgment. *See* Fed. R. Crim. P. 32.2(b)(1)(A), (2)(A); *see also United States v. Padron*, 527 F.3d 1156, 1162 (11th Cir. 2008) (holding that Federal Rules of Criminal Procedure "explicitly contemplate the entry of money judgments in criminal forfeiture cases"). The forfeiture money judgment is final as to the defendant "[a]t sentencing—or at any time before sentencing if the defendant consents." *See* Fed. R. Crim. P. 32.2(b)(4)(A). No ancillary proceeding is required when forfeiture consists solely of a money judgment. *See* Fed. R. Crim. P. 32.2(c)(1). As additional property is identified to satisfy the forfeiture money judgment, the Court must order the forfeiture of such property. *See* Fed. R. Crim.

P. 32.2(e)(1) ("[T]he court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that . . . is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or . . . is substitute property . . . ."); *see also* Fed. R. Crim. P. 32.2(b)(2)(C).

The amount of the money judgment should represent the full sum of directly forfeitable property, regardless of the defendant's ability to satisfy the judgment at the time of sentencing. *See United States v. McKay*, 506 F. Supp. 2d 1206, 1211 (S.D. Fla. 2007) (adopting the majority rule); *see also United States v. Blackman*, 746 F.3d 137, 143-44 (4th Cir. 2014) ("The fact that a defendant is indigent or otherwise lacks adequate assets to satisfy a judgment does not operate to frustrate entry of a forfeiture order."). The Court determines the amount of the money judgment "based on evidence already in the record, including any written plea agreement, and any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). The Court in imposing a forfeiture money judgment may rely on an agent's reliable hearsay. *See United States v. Stathakis*, 2008 WL 413782, at *14 n.2 (E.D.N.Y. Feb. 13, 2008).

### C. Property Subject to Forfeiture in Instant Criminal Case

According to the Defendant's Factual Proffer, Safe Haven Recovery Inc. ("Safe Haven") purported to operate as a licensed "substance treatment center." Factual Proffer at ¶ 16, ECF No. 320. Safe Haven billed health care benefit programs for substance abuse treatment services purportedly rendered to patients. *Id*. at ¶ 17. The Defendant was the owner and operator of Safe Haven and a co-signor on various Safe Haven corporate bank accounts. *Id.* at ¶ 18.

Safe Haven billed insurance providers for various services and therapy sessions that its patients never attended, or that were substandard, and were not integrated into treatment. *Id.* at ¶

21. Patients were admitted to Safe Haven for levels of care they did not qualify for, and were often cycled to different levels of care and then readmitted. *See id.* The Defendant knew this and allowed for such services to be billed anyway. *Id.*

Additionally, Safe Haven required clients to undergo a urine drug screen two or more times per week. *Id.* at ¶ 23. Regardless of the drug screen results, urine specimens were sent to external laboratories for routine confirmatory testing; these laboratories billed and were paid for these services. *Id.* Safe Haven thus caused the ordering of excessive, medically unnecessary confirmatory urine testing from external laboratories, and failed to use the results of these tests to guide medical treatment of their clients. *Id.* The Defendant knew that these urine tests as described herein were medically unnecessary, and that labs were billing and getting paid for these urine drug tests. *Id.*

Further, the Defendant and his co-conspirators prepared and caused the preparation and submission of fraudulent insurance claims to private insurance plans attesting that the billed amounts qualified for reimbursement. *Id.* at ¶ 24. These claims were fraudulent because, among other things: (i) the claims falsely stated that the therapy sessions, treatment, controlled substances, and urine drug tests had been medically necessary when, in truth and in fact, some of these claims were not medically necessary; and (ii) the claims falsely stated that the therapy sessions and treatment had been provided as billed when, in truth and in fact, some of the claimed therapy sessions and treatment was never provided, or was not provided as billed. *Id.*

Safe Haven submitted claims for reimbursement to various health benefit plans. *Id.* at ¶ 19. Safe Haven billed approximately $59,300,000 and was paid approximately $13,600,000 by these Insurance Plans during the conspiracy period. *Id.* The Defendant agreed that $13,657,173.00

represents the total amount of gross proceeds he obtained as a result of the charged health care fraud conspiracy. *See* Plea Agreement, at ¶ 18 (i), ECF No. 319.

The insurance claims disbursements were deposited into the bank accounts sought for forfeiture in this matter, which the Defendant agrees to forfeit to the United States. *See* Factual Proffer at ¶ 25, ECF No. 320; *see also* Plea Agreement, at ¶ 18 (ii) – (ix), ECF No. 319. These funds on deposit in these bank accounts represent the proceeds of the offense to which the Defendant has pled guilty. *See* Factual Proffer at ¶ 25, ECF No. 320.

Additionally, approximately $71,503.26 in in fraudulently billed insurance disbursements, were used to make real property tax payments and other maintenance payments for Rosyln Property. *See id.* at ¶ 26. Further, approximately $206,202.39 in health care fraud proceeds were used to make mortgage payments, real property tax payments, and other maintenance payments on the Boca Raton Property. *Id.*

Based on the record in this case, the total value of the gross proceeds traceable to the offense of conviction is $13,657,173.00, which sum may be sought as a forfeiture money judgment pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

In addition, also based on the record in this case, the following specific property is directly subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(7):

(i) The contents of account number 483049118363 at Bank of America held in the name of Safe Haven Recovery, Inc.;
(ii) The contents of account number 483072846301 at Bank of America held in the name of Safe Haven Recovery, Inc.;
(iii) The contents of account number 483049118305 at Bank of America held in the name of Kiawah Properties Corp.;
(iv) The contents of account number 4835570293 at Bank of America held in the name of Interactive Abstract Corp.;
(v) The contents of account number 4835570303 at Bank of America held in the name of Interactive Abstract Corp.;
(vi) The contents of account number 898086389630 at Bank of America held in

                the name of Troon Consulting, Inc.;
(vii)    The contents of account number 483068437818 at Bank of America held in the name of Excel One Municipal Corp.; and
(viii)   The contents of account number 898095180930 at Bank of America held in the name of First Rate Medical Billing Corp.

Accordingly, the Court should issue the attached proposed order, which provides for the entry of a forfeiture money judgment against the Defendant; the forfeiture of specific property; the inclusion of the forfeiture as part of the Defendant's sentence and judgment in this case; and permission to conduct discovery to locate assets ordered forfeited.

WHEREFORE, pursuant to 18 U.S.C. § 982(a)(7), and the procedures set forth in 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States respectfully requests the entry of the attached order.

## LOCAL RULE 88.9 CERTIFICATION

Pursuant to Local Rule 88.9, I hereby certify that the undersigned counsel has conferred with defense counsel by e-mailing a copy of the instant motion and proposed order to defense counsel on June 26, 2023. Defense counsel replied by e-mail on June 27, 2023, and confirmed that there is no objection to the motion.

                                                            Respectfully submitted,

                                                            MARKENZY LAPOINTE
                                                            UNITED STATES ATTORNEY

By:        /s/
                                                            Nicole Grosnoff
                                                            Peter A. Laserna
                                                            Assistant United States Attorneys
                                                            Court ID Nos. A5502029 & A5502555
                                                           U.S. Attorney's Office
                                                           99 N.E. 4th Street
                                                           Miami, FL 33132
                                                           Tel: (305) 961-9294 / (954) 660-5770
                                                           nicole.s.grosnoff@usdoj.gov
                                                           peter.laserna@usdoj.gov